UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:07-CR-10-FL1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **MEMORANDUM &** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| TRENSTON DARNELL | ) | |
| GATLING | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

This matter comes before the court pursuant to 28 U.S.C. 636(b)(1) to issue a Memorandum and Recommendation on Defendant's Motion to Suppress evidence and statements allegedly seized in violation of Defendant's rights under the Fourth and Fifth Amendments to the United States Constitution **[DE-20]**. The Government has responded to this motion **[DE-21]** and the matter is now ripe for adjudication. For the reasons which follow, it is RECOMMENDED that Defendant's Motion to Suppress be DENIED.

**I. Background**

Because the facts are largely undisputed, unless otherwise noted, the court adopts Defendant's version of the facts. On January 3, 2007, Chief Jimmy C. Barmer of the Aulander Police Department responded to a call in reference to a breaking and entering at the home of Louis Collins at 107 Blanchard Drive in Aulander, North Carolina. Chief Barmer was advised, among other things, that a shotgun had been stolen from the residence and that the suspect was Defendant.

In an effort to locate Defendant, Chief Barmer initially proceeded to a residence located on Commerce Street in Aulander. At this location, Chief Barmer learned from Lonnie Bazemore, a neighbor of Louis Collins, that Defendant had allegedly visited his home on the evening January 2, 2007, and that he had a shotgun with black tape on the barrel and a yellow bag in his possession. Mr. Bazemore further claimed that Defendant had previously disclosed his plans to burglarize the residence of Louis Collins. After learning this information, Chief Barmer proceeded to the burglarized residence located on Blanchard Drive for further investigation.

At the scene, Louis Collins reported to Chief Barmer that before leaving for work on January 2, 2007, he saw Defendant at the end of the path leading from his mobile home. Later, after Mr. Collins returned home from work, he noticed that his shotgun, air conditioner, and yellow bag with Timberland boots were missing.

During Chief Banner's investigation at this location, Tiffany Harrell, Defendant's cousin, came out of another residence in the area. At the request of Chief Barmer, Ms. Harrell then approached the scene. After being questioned by Chief Banner about the whereabouts of Defendant, Ms. Harrell advised that Defendant was at his mother's residence on Cedar Street.

In response to this information, Chief Barmer informed Tiffany Harrell that he believed Defendant had stolen a shotgun from Louis Collins' residence. Chief Banner asked Ms. Harrell whether Defendant would give her the shotgun if she requested it from him. Ms. Harrell advised Chief Banner that she believed that Defendant would return the shotgun to her. As a result, Chief Banner then asked Tiffany Harrell to retrieve the shotgun and bring it back to him.

Ms. Harrell left the scene with Johnny Bess, the roommate of Louis Collins. Approximately five minutes later, Ms. Harrell returned with a shotgun, and stated that she had retrieved the weapon from Defendant.

Chief Banner took possession of the firearm, which Mr. Collins identified, and then proceeded to the residence of Defendant's mother located at 103 Cedar Street. After making contact, Chief Banner requested that Defendant sit with him in his vehicle to discuss the situation and his investigation. Chief Banner then proceeded to question Defendant while they were sitting in his car.

Ultimately, Chief Banner had Defendant write two separate statements- one concerning the instant offense, and the other concerning an unrelated robbery that had occurred at an earlier time.

Defendant was not read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (19660) during the questioning, nor was he asked to sign a waiver form. Furthermore, Defendant maintains that he did not feel free to leave Chief Banner's vehicle or end the questioning.

On June 7, 2007, Defendant was federally indicted and charged with being a felon in possession of a firearm in violation of 18 U.S.C.§ 922(g)(l) and 924 and possessing and concealing a stolen firearm in violation of 18 U.S.C. §922(j) and 924.

## II. Analysis

The reach of Defendant's argument[1] exceeds the grasp of the facts he alleges. Defendant first alleges that law enforcement violated his Fourth Amendment rights against unreasonable searches and seizures by recruiting a private citizen as an agent to perform an unlawful search and seizure.

The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as "instruments or agents" of the Government. *See* U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971). It does not provide protection against searches by private individuals acting in a private capacity. *See United States v.*

---

[1] For example, the Defendant argues that "Chief Banner recruited Tiffany Harrell to perform a **search and seizure....**" and that "Tiffany Harrell ... went to Mr. Gatlilng's home for the express purpose of **searching and seizing**, evidence..." Defendant's memorandum at 4. His version of the facts bear little resemblance to this argument.

*Jacobsen*, 466 U.S. 109, 113(1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks and citation omitted)). Thus, "'evidence secured by private searches, even if illegal, need not be excluded from a criminal trial.'" *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003)(quoting *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir. 1992)); *see also United States v. Walter*, 447 U.S. 649, 656(1980) ("[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." (citing *Coolidge*, 403 U.S. at 487-90)).

Following the Supreme Court's pronouncements on the matter, the Courts of Appeals have identified two primary factors that should be considered in determining whether a search conducted by a private person constitutes a Government search triggering Fourth Amendment protections. These are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation. *See, e.g.*, *United States v. Paige*, 136 F.3d 1012, 1017-18 (5th Cir. 1998); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987); *United States v. Walther*, 652 F.2d 788, 791-92 (9th Cir.1981). Although the Fourth Circuit has not articulated a specific test, it has "embraced this two-factor approach" and "compressed [it] into 'one highly pertinent consideration.'" *See Ellyson*, 326 F.3d at 527 ("One highly pertinent consideration is 'whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends.'" (quoting *Feffer*, 831 F.2d at 739)).

In its response, the Government continues the story of Ms. Harrell's retrieval of the shotgun where

Defendant's recitation of facts in paragraph 6 above leaves off:

> Ms. Harrell was driven by Johnny Bess to the Frog Pond trailer home of Defendant's mother at 103 Cedar Street. Ms. Harrell found the Defendant there, and told him that Chief Barmer wanted the stolen shotgun. At first, Defendant denied knowing anything about a stolen shotgun. However, as Ms. Harrell started to leave, Defendant went to his bedroom and removed the shotgun from under his mattress. Defendant gave Ms. Harrell the gun. Defendant also told Ms. Harrell that he'd left the stolen air conditioning unit behind a trailer in the Blanchard Trailer Park.
> Ms. Harrell placed the gun in the back seat of the car driven by Johnny Bess, and the two returned to Mr. Collins' residence in the Blanchard Trailer Park. They had been gone for a very short period of time, which Chief Barmer estimated was five minutes. Chief Barmer retrieved the shotgun from the car, and Mr. Collins identified the shotgun as his.
> Government's memorandum at 4.

The Government's version of the facts is not contradicted by Defendant. Rather, his version is silent as to these events or supports the Government version (e.g. "Chief Banner asked Ms. Harrell whether Mr. Gatling would **give** her the shotgun if she **requested** it from him. Ms. Harrell advised Chief Banner that she believed that Mr. Gatling **would return** the shotgun to her. As a result, Chief Banner then asked Tiffany Harrell to retrieve the shotgun and bring it back to him." Defendant's memorandum ¶5; "...Ms. Harrell returned with a shotgun, and stated that she had retrieved the weapon from Mr. Gatling." Defendant's memorandum ¶6, emphasis added) . It is clear from these facts that Ms. Harrell intended to assist law enforcement. Thus the second prong of the *Jarrett* test is satisfied.

However, it is equally clear that the first prong is not satisfied because no search took place. Ms. Harrell merely requested that the Defendant return the shotgun, which he did.. In the context of the Fourth Amendment to the United States Constitution, a search is "a probing or exploration for something that is concealed or hidden from the searcher" and a seizure is "a forcible or secretive dispossession of something against the will of the possessor or owner." United States v. Haden, 397 F.2d 460, 465 (7th Cir. 1968). Ms. Harrell's actions do not rise to this level on these facts.

Defendant next alleges that his rights under the Fifth Amendment to the United States Constitution were violated when, while in custody, he was interrogated without being advised of his *Miranda* rights.

The Fifth Amendment of the United States Constitution guarantees that "No person...shall be compelled in any criminal case to be a witness against himself...." When an individual is interrogated while in custody, police must advise him of specific rights, known as *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436 (1966). However, the warnings required by the Supreme Court in *Miranda* "need only be administered when the defendant is in custody." *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006). In determining whether a defendant was in custody, "[i]t is the 'compulsive aspect of custodial interrogation, and not the strength of the government's suspicions at the time the questioning was conducted' that implicates *Miranda*." *Id*. (*quoting Beckwith v. United States*, 425 U.S. 341 (1976)). "As such, a custodial interrogation does not result merely because the 'individual is the 'focus' of an investigation' . . . ." *Id.* (*quoting United States v. Jones*, 818 F.2d 1119, 1123 (4th Cir. 1987)). The determination is an objective one - "how a reasonable man in the suspect's position would have understood his situation." Id. (citations and quotations omitted). Ultimately, "[a]n individual is 'in custody' for *Miranda* purposes when, under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *United States v. Howard,* 115 F.3d 1151, 1154 (4th Cir. 1977)(quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

Once again, the court turns to the Government's statement of facts to supplement the record:

> Chief Barmer then drove his personal pick-up truck to 103 Cedar Street. It was about 10 o'clock in the morning. He parked in the driveway, walked to the door, and knocked. Defendant answered. Chief Barmer told Defendant he needed to talk to him about the burglary but, before he did, he needed the stolen boots. Defendant walked towards his bedroom and returned with the boots in the yellow plastic bag and gave them to Chief Barmer. Chief Barmer then informed the Defendant, for the first of several times, that

> Defendant was not under arrest. Chief Barmer asked Defendant to sit with him in his pick-up truck to talk about the burglary. Defendant agreed. The two men walked to Chief Barmer's pick-up truck; Chief Barmer, who was dressed in casual clothes, got in the driver's side, and Defendant got in the passenger's side. Chief Barmer had no handcuffs, and the passenger-side door lock was unlocked and remained unlocked. While Chief Barmer had a handgun he kept locked in the center console, that gun was not visible to Defendant, nor did Chief Barmer inform Defendant that he had a gun. Chief Barmer again told Defendant he was not under arrest and could leave at any time. Then, in discussing the burglary, Defendant confessed. He wrote a short statement in which he admitted to the burglary, stating he had been "high on crack" and had gone to Mr. Collins' trailer home "to get some money for more crack . . . ." He also wrote of the stolen shotgun and boots that he "gave them back" because "I know it was crack that made me take it. Chief Barmer and Defendant had been in the pick-up truck for approximately 20 to 30 minutes. Chief Barmer told Defendant a final time he was not under arrest, and was free to go, but that, if Chief Barmer concluded he had sufficient evidence, he would pursue charges against Defendant. Defendant got out of Chief Barmer's truck and Chief Barmer drove away. Two days later, Chief Barmer arrested Defendant for the burglary.
> Government's memorandum at. 6-7

In paragraph 9 of Defendant's statement of facts, counsel lays the ground work for his argument, stating that "Mr. Gatling ... has no higher than an eighth grade education", and that Defendant "did not feel free to leave Chief Barmer's vehicle or end the questioning and interrogation." **[DE-20]**. From these bald assertions, flows the argument:

> "[i]n the present matter, Chief Barmer effectively took Mr. Gatling into custody by restraining his freedom of movement for purposes of an interview" and that, a reasonable person in Mr. Gatling's position would not have felt at liberty to leave the scene. Mr. Gatling knew Chief Barmer had a high-ranking police status and he respected and was obedient to his authority .... These factors coupled with Mr. Garling's lack of sophistication and low educational level would not put him, or any reasonable person in his similar situation, in a position to feel as if they could leave Chief Barmer's vehicle and end the questioning and interrogation.
> *Id.* at 7.

It is undisputed that: Defendant seated himself in the passenger seat of the Chief's unmarked personal pickup truck; the truck was parked in the driveway of Defendant's mother's house; the passenger door was unlocked; the Chief was not in uniform and alone; no restraints were used on the Defendant; and that Chief Barmer told Defendant, both before the men walked to the pick-up

truck, and while in the pick-up truck, that Defendant was not under arrest and Defendant was free to leave at any time. Indeed, after he had written a confession to the burglary, and 20 to 30 minutes after first getting into the pick-up truck, Defendant did leave, and Chief Barmer drove away. The Defendant was arrested two days later.

The facts in this case fail to support Defendant's claim that a reasonable person in his position[2] would have understood that he was in custody. Judged by the totality of the circumstances, Defendant's freedom of action was not curtailed to a degree associated with formal arrest.

**III. Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Defendant's Motion to Suppress **[DE-20]** be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 4th day of September, 2007.

_____
William A. Webb
U.S. Magistrate Judge

---

[2] Like Defendant's claim that he "did not feel free to leave Chief Barmer's vehicle or end the questioning and interrogation," his contention concerning his limited education is not pursued either with additional facts or citation to authority.