IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:07-CR-10-FL(1)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TRENSTON DARNELL GATLING, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the memorandum and recommendation ("M&R") (DE # 23) of United States Magistrate Judge William A. Webb. Upon considering defendant's motion to suppress (DE # 20) and government's response in opposition (DE # 21), the magistrate judge recommended that the court deny defendant's motion. No objections to the M&R have been filed, and the time within which to make any objection has expired. In this posture, the matter is ripe for ruling. Upon careful review and consideration, the court adopts the recommendation of the magistrate judge, and denies defendant's motion to suppress.

BACKGROUND

On January 3, 2007, Chief Jimmy C. Barmer of the Aulander Police Department responded to a call reporting a breaking and entering at the home of Louis Collins at 107 Blanchard Drive in Aulander, North Carolina. Chief Barmer was advised that a shotgun was among the items reported stolen from the residence. Chief Barmer was also told that defendant was a suspect in the robbery.

Attempting to locate defendant, Chief Barmer spoke to Lonnie Bazemore, a neighbor of Louis Collins. Bazemore informed Chief Barmer that on the night of January 2, 2007, defendant had visited Bazemore's residence, and that he had a shotgun with black tape on the barrel and a

yellow bag in his possession. Bazemore also claimed that defendant had previously expressed that he planned to burglarize the residence of Louis Collins.

Chief Barmer proceeded to the site of the alleged burglary on Blanchard Drive. Louis Collins, the purported victim of the robbery, told Chief Barmer that prior to leaving for work on January 2, 2007, he saw defendant at the end of the path leading from his mobile home. Mr. Collins further explained that upon returning home from work he realized that his shotgun, his air conditioner, and a yellow bag with Timberland boots were missing. During the course of Chief Barmer's investigation at the scene, Tiffany Harrell, a cousin of the defendant's, emerged from another residence in the area. At Chief Barmer's request, Ms. Harrell approached the scene, and was thereupon questioned about the whereabouts of defendant. Ms. Harrell responded that defendant was at his mother's residence, located on Cedar Street. Chief Barmer told Ms. Harrell that he believed defendant had robbed Louis Collins of a shotgun, and asked Ms. Harrell if she thought that defendant would give her the shotgun if she requested it. Ms. Harrell responded in the affirmative, prompting Chief Barmer to ask her to procure the shotgun from defendant in this manner.

Ms. Harrell and Johnny Bess, a roommate of Louis Collins, left the scene. Approximately five minutes later Ms. Harrell returned with the shotgun and stated that she had retrieved the weapon from defendant. Chief Barmer took possession of the shotgun, which was later identified by Mr. Collins as the one which had been taken from his home. Chief Barmer then proceeded to defendant's mother's residence at 103 Cedar Street. Chief Barmer encountered defendant and asked him to sit in Barmer's vehicle to discuss the situation and investigation. While sitting in the vehicle Chief Barmer proceeded to question defendant.

Ultimately, defendant wrote two separate statements relating to his guilt. One of these statements concerned the instant offense and the other an unrelated robbery that had previously

occurred.

At no time during the questioning was defendant read his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), nor was he asked to sign a waiver form. Defendant also alleges that he did not feel free to leave Chief Barmer's vehicle or end the questioning.

On June 7, 2007, defendant was federally indicted and charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924, and possessing and concealing a stolen firearm in violation of 18 U.S.C. 922(j) and 924.

DISCUSSION

Defendant first alleges that law enforcement violated the rights guaranteed him by the Fourth Amendment by recruiting a private citizen to perform an unreasonable search and seizure against him. Defendant claims that by asking his cousin Tiffany Harrell to retrieve the shotgun from him his rights were violated, and the shotgun should therefore be suppressed and unavailable for use as evidence against him.

The Fourth Amendment provides guarantees against unreasonable searches and seizures perpetrated by the Government and individuals acting as "instruments or agents" of the government. Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971). However, in this situation Ms. Harrell was not acting in a governmental capacity, as its agent or otherwise. Rather, Ms. Harrell approached defendant through her relationship with him as his cousin, and interacted with him on that basis. Accordingly, Ms. Harrell retrieved the shotgun from defendant as a private individual acting in a private capacity, and the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Because "evidence secured by private searches, even if illegal, need not be

3

excluded from a criminal trial" suppression is not available to defendant under this argument. United States v. Kinney, 953 F.2d 863, 865 (4th Cir. 1992).

The facts of defendant's case do not satisfy the standard announced by the Supreme Court and Courts of Appeals in determining whether a search conducted by a private individual constitutes a Government search which thereby triggers the protections of the Fourth Amendment against unreasonable search and seizure. Specifically, the facts of defendant's case fail to satisfy the requirement that the private individual perform an actual, invasive search. See, e.g., United States v. Paige, 136 F.3d 1012, 1017-18 (5th Cir. 1998); United States v. Feffer, 831 F.2d 734, 739 (7th Cir. 1987); United States v. Walther, 652 F.2d 788, 791-92 (9th Cir. 1981). When deciding whether a violation of a defendant's Fourth Amendment right has occurred the Fourth Circuit inquires into whether the private individual's behavior constituted "intrusive conduct" of which the government knew of and acquiesced. United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 2003) (quoting Feffer, 831 F.2d at 739)).

In the motion to suppress and incorporated memorandum of law, the defendant's own recitation of the pertinent facts in this case demonstrate that no such "intrusive conduct," nor even a search, occurred with regard to Harrell's retrieval of the shotgun from defendant. Rather, defendant recites that:

> Chief Barmer asked Ms. Harrell whether [defendant] would give her the shotgun if she requested it from him. Ms. Harrell advised Chief Barmer that she believed that [defendant] would return the shotgun to her. As a result, Chief Barmer then asked Tiffany Harrell to retrieve the shotgun and bring it back to him. Ms. Harrell left the scene . . . Approximately five minutes later, Ms. Harrell returned with a shotgun, and stated that she retrieved the weapon from [defendant].

(Def.'s Mot. to Supp. at 2). In the context of a defendant's Fourth Amendment right against unreasonable search and seizure, a search is "a probing or exploration for something that is

4

concealed or hidden from the searcher" and a seizure is "a forcible or secretive dispossession of something against the will of the possessor or owner." United States v. Haden, 397 F.2d 460, 465 (7th Cir. 1968). Considering the facts of defendant's case in light of this standard, it is clear that Ms. Harrell's actions cannot be considered an unreasonable search or seizure under this precedent.

Defendant next alleges that his Fifth Amendment rights were violated when he was taken into custody and subjected to interrogation without having been provided with his Miranda warnings. This argument is raised in reference to the questioning that occurred in Chief Barmer's vehicle and resulted in defendant signing two written statements. Defendant argues that the two statements that he signed as a result of this questioning should be suppressed.

When an individual is taken into police custody and interrogated that person must be advised of his specific Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966). However, the protections afforded by the recitation of the Miranda rights need only be administered where the defendant has actually been taken into custody by the law enforcement. United States v. Uzenski, 434 F.3d 690, 704 (4th Cir. 2006). The hallmark of "custody" is an inability to call a halt to the interrogation, described by the Fourth Circuit as "the compulsive aspect of custodial interrogation." Id. In determining the degree to which a defendant was compelled to remain in the keeping of law enforcement, an objective standard is used, but generally to trigger Miranda the "suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" United States v. Howard, 115 F.3d 1151, 1154 (4th Cir. 1977) (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)).

Defendant argues that he did not feel free to leave Chief Barmer's vehicle or end the questioning and interrogation, and as such the encounter rose to the level of a custodial interrogation. (Def.'s Mot. to Supp. at 7-8). In an attempt to support this conclusion defendant points out that he has no higher than an eighth grade education. Id. at 3. Despite these arguments,

5

however, the facts as presented in the government's memorandum indicate that application of an objective person standard can only lead to the conclusion that the event in question did not rise to the level of a custodial interrogation. As the M&R pointed-out, it is undisputed that: the defendant seated himself in the passenger seat of the Chief's unmarked personal pickup truck; the truck was parked in the driveway of defendant's mother's house; the passenger door was unlocked; the Chief was in plain clothes and alone; no restraints were used on the defendant; and that Chief Barmer told defendant, both before the men walked to the pick-up truck while in the pick-up truck, that defendant was not under arrest and defendant was free to leave at any time. (M&R at 7-8). In light of these facts, the defendant's claim that he was unlawfully interrogated in violation of his Fifth Amendment rights cannot succeed. Chief Barmer explicitly stated on multiple occasions that defendant was free to leave at any time. Nevertheless, defendant proceeded to complete the statements that he now seeks to suppress. Accordingly, this request must be denied.

Upon careful review and consideration, and in light of the foregoing analysis, the court hereby ADOPTS the recommendation of the magistrate judge as its own, and, for the reasons stated therein, defendant's motion to suppress (DE #20) is DENIED.

SO ORDERED, this the 15th day of October, 2007.

                                                      /s/ Louise W. Flanagan
                                                     LOUISE W. FLANAGAN
                                                     Chief United States District Judge